STATE ex rel v HERMAN et

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1705.    Decided Jan. 13, 1942.

P. Eugene Smith, Dayton, for relator.
Matthews, Matthews & Altick, Dayton, for respondents.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an original action in our court, wherein plaintiff prays for a writ of mandamus against the City of Oakwood, Ohio, an incorporated municipality, and its members of council, consisting of five individuals specifically named.

The relator in substance alleges that it is a corporation, duly organized and doing business under the laws of the State of Ohio, with an office and principal place of business in the City of Oakwood, Montgomery County, Ohio. Relator further alleges that the Press Publishing Company is also a corporation, duly organized and existing under and by virtue of the laws of the State of Ohio, with its office and principal place of business in the City of Oakwood, Montgomery County, Ohio. It is further alleged that the City of Oakwood is and was at all times herein mentioned a municipal corporation, organized and existing under the laws of the State of Ohio, and that the named five defendants are the duly appointed, qualified and acting members of the Council of the said City of Oakwood, and as such councilmen are charged with the duty of publishing the ordinances and resolutions initiated and passed by the Council of said incorporated municipality, required by law to be published.

Relator further alleges for its cause of action against the respondents that it is a taxpayer and the owner and publisher of a newspaper of general circulation in Montgomery County, Ohio; that for the purpose of publishing said newspaper it employs a regular staff of general news reporters, an editorial staff, an advertising staff, a columnist, a fashion editor, a sports commentator and a circulation department, and that the items of general news, editorials, columnists' articles, fashion notes and sports items gathered by said employees are regularly published in every edition of said newspaper; that its newspaper is published once each week, and that it is printed by the Press Publishing Company, whose principal place of business is in the City of Oakwood, Ohio, said newspaper being printed at its principal place of business; that said newspaper has a circulation in Montgomery County, Ohio, of approximately 48,000 copies; that the Oakwood edition of said newspaper is known as the Oakwood Press and that said newspaper is regularly distributed to every home in the entire City of Oakwood, being approximately 2400 copies of the 4900 copies of said edition distributed

in the vicinity of the municipality of Oakwood; that the edition of said newspaper circulated outside of the City of Oakwood in Montgomery County, is known as the Dayton Press and is delivered to homes in every section of Montgomery County.

Relator further alleges that its newspaper is offered for sale in the State of Ohio; that more than 25 copies of said newspaper are sold by mail each week, and that more than 10 copies of said newspaper are sold to transient persons calling at relator's office to purchase the same; that the remaining balance of the circulation of relator's newspaper is distributed and delivered free of charge to the homes of persons living in the City of Oakwood, in the County of Montgomery.

Relator further alleges that its newspaper is the only newspaper published and of general circulation in the City of Oakwood; that the City of Oakwood is a municipality organized under the provisions of §3515-1 GC, and is governed by a council in pursuance of the plan of organization known as the City Manager Plan, as defined by the General Code of Ohio; that in pursuance of the powers granted to said City of Oakwood, Ohio, by the said General Code provisions for said City Manager Plan, said respondent City of Oakwood, Ohio, by its members of council has enacted an ordinance of a general nature, being Ordinance No. 1340, entitled "An Ordinance to Vacate Houk Road from the south line of Katherine Street to the south corporation line of the City of Oakwood, as delineated in Plat Book L, pages 33 and 34, Montgomery County, Ohio and as modified and described in ordinance passed March 2, 1925—No. 484—and ordinance passed July 12, 1926 —No. 590."

Relator further alleges that said Ordinance No. 1340 was passed by the Council of the City of Oakwood, Ohio, on the 2nd day of June, 1941, and has not been published by said respondent in relator's newspaper; that respondents, as members of the Council of the City of Oakwood, being the entire council of said city, have failed and neglect-

ed to deliver or direct the delivery to this relator of a copy of said ordinance for publication in relator's newspaper.

Wherefore relator prays for writ of mandamus, directed to the respondents, requiring them to forthwith deliver a copy of Ordinance No. 1340 to the relator herein for publication in its newspaper for the time and in the manner required by law, and for its costs herein expended.

The respondents filed answer, wherein is admitted the allegations of the petition. In the prayer they ask that their interest be protected and that a proper order be issued by this court.

In addition to the pleadings there are presented a stipulation and an agreed statement of facts. To the agreed statement of facts are attached three copies of relator's publication, dated June 6, June 12 and June 19, respectively. The agreed statement of facts really adds nothing to the pleadings except to elaborate on some of the facts alleged in the petition.

Through the briefs we are advised that the only question presented is whether or not, under the facts stated, relator's publication is a newspaper so as to come within the terms of the pertinent section of the Code requiring publication.

Counsel for respondents admit that if the publication is a newspaper, as contemplated under the Code, then it would be the obligation of the City Council to cause to be published therein ordinances of a general nature. It is further admitted that the ordinance referred to in the relator's petition is of a general nature.

The relator's publication qualifies in every particular as a newspaper of general circulation, unless the fact that its major circulation is free distribution and only a very small part paid subscription will take it out of the classification. Under the pleadings and agreed statement of facts it is admitted that the weekly publication goes to every home within the city limits of Oakwood, but the distribution in the main is free; only twenty-five copies are sent out on paid subscription and approxi-

mately ten copies are sold from the office each week.

In addition it is stipulated that the weekly publications are offered for sale.

At a former term of this court we had before us a similar action by the relator against the city manager and clerk, as defendants. In that case we dismissed the petition, principally upon the ground that the city manager and city clerk were not proper parties defendant. In that case we volunteered the opinion that a publication could not be considered a newspaper for the purpose of publishing statutory notices unless it came within the definition laid down in §6319-2 GC. This section reads as follows:

"6319-2. Any person or persons, firm or firms, co-partnership or voluntary association, joint stock association, company or corporation, whenever organized or incorporated, engaged in the business of printing or publishing a newspaper, magazine or other periodical sold or offered for sale in this state, is a newspaper company, and any such newspaper, magazine or other periodical publication is a newspaper within the meaning of this act."

Counsel for relators urge that its publication comes within this definition for the reason that the same was offered for sale and sold, although the greater number of papers is distributed free.

Counsel for relators present the further argument, with much logic, that this section has no application to the instant case, but is merely the first section of the chapter devoted to itemizing the procedure for causing the correction of false statements printed in newspapers, etc. Counsel for relators in their briefs cite several Ohio cases which are pertinent to the instant case.

The first case to which we are re-ferred is that of **Ambos v Campbell, 40 Oh Ap 346.** Syllabus 3 reads as follows:

"3. Newspaper may be of 'general circulation' in county within statute requiring publication of notice concerning annexation petition, although circulation need not consist exclusively of paid subscribers. (§3520 GC)."

On page 350 of the opinion the court gives the following narrative of facts:

"The evidence discloses that the Heights Press has a paid circulation of 2,625 subscribers; that, while these subscribers are largely in the Heights region, they are scattered nevertheless through various parts of the county; that it has an unpaid circulation of 8,000, and altogether its actual circulation is between ten and eleven thousand, extending through nearly every section of this county."

Thereafter in the opinion the court, in substance, makes the statement that such circulation need not necessarily consist exclusively of paid subscriptions; that the purpose of the law is clear, viz., that the notice should be inserted in a newspaper which people in the community are likely to read, and when the circulation is extensive it makes no difference whether it consists of paid subscriptions or non-paid recipients of the same.

The next case to which we are referred is that of **State ex rel The Sentinel Company v Commissioners of Wood County, 14 C. C., N.S. 531.** Syllabus 3 reads as follows:

"3. A newspaper having a circulation of eight hundred in a county containing a population of fifty thousand distributed over twenty townships. and in fifteen of those townships containing a population of thirty-five thousand a circulation of only thirty-six, is a newspaper of general circulation

within the meaning of the statute providing for the publication."

This decision was by a divided court, Parker, J., dissenting. The dissenting opinion contains a much fuller statement of facts than does the majority opinion. The case was carried to the Supreme Court and affirmed without opinion, 84 Oh St 447.

We are also referred to the case of Bising v City of Cincinnati et, 126 Oh St 218. In this case the city was acting under the provisions of §4676-1 GC, which authorizes charter cities to adopt methods of procedure relative to publishing of legislation, either under the provision of the general law or under any method provided by their charter. The city charter had provided for publication in a newspaper legally published under authority of the city council. The court held that the city council could not make legal publication in a periodical which did not have the attributes of a newspaper. The periodical adopted by the council as an official newspaper was called the City Bulletin. Publications contained in the Bulletin were confined solely to the proceedings of the city and its municipal offices; it contained neither news of other public bodies, nor notices of general current events, either local or foreign. The court stated that "measured by the definition given to the word newspaper by lexicographers and by court decisions, the City Bulletin is not a newspaper within the meaning of that term as used in the ordinance and city charter".

Within a very short period of time the identical question was again presented under different facts, and reported in 127 Oh St p. 84. The action was against the City Auditor and was entitled State ex rel Ellis, City Solicitor v Urner, City Auditor. The action was one in mandamus, and it appears that the City Auditor had refused to carry the publication in the City Bulletin of the City of Cincinnati, by reason of the decision of the Supreme Court in the case of Bising v City of Cincinnati, 126 Oh St, supra. In this second case the Supreme Court allowed the writ. The decision was a per curiam, and on page 89 appears the following:

"It therefore now appears to the court that the periodical in question contains news and happenings of local and general interest, social, political, moral, business, professional and educational, intended for the information of the general reading public of Cincinnati. None of these facts were presented in the Bising case, supra."

We think it is inferable that the City Bulletin was not circulated on a paid subscription.

It can not be said that any of the cited cases we have referred to is exactly analogous to the facts in the instant case. However, we think the basic reasonings are such as require us to determine that relator's publication was a newspaper and within the meaning of that term, as used under pertinent sections of the General Code.

Writ allowed as prayed.

Entry may be prepared in accordance with this opinion.

GEIGER, PJ. & HORNBECK, J., concur.